UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TRACY DENISE BROWN o/b/o G.J.R.,

                              Plaintiff,

          v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

                              Defendant.
_____

**DECISION AND ORDER**
**No. 12-CV-6231T**

## **INTRODUCTION**

Tracy Denise Brown ("Plaintiff"), on behalf of her minor daughter ("G.J.R."), brings this action pursuant to Title XVI of the Social Security Act, seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") Joseph Grow was not supported by substantial evidence in the record and was based on erroneous legal standards.

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Thus, the Commissioner's motion for judgment on the pleadings is granted, and Plaintiff's motion is denied. Plaintiff's complaint is dismissed with prejudice.

## PROCEDURAL HISTORY

On September 24, 2008, Plaintiff filed an application for SSI on behalf of G.J.R., claiming that she was disabled due to Crohn's disease and congenital abnormalities of both thumbs and index fingers. Administrative Transcript ("Tr.") 93-99. Plaintiff's claim was administratively denied on October 20, 2008. Tr. 62-64.

At Plaintiff's request, an administrative hearing was conducted on September 1, 2010, with ALJ Joseph Grow presiding via videoconference from Baltimore, Maryland. Tr. 46-61. G.J.R. and Plaintiff, who were not represented, testified at the hearing. Id. On September 21, 2010, the ALJ denied the claim. Tr. 14-25. He found that G.J.R. was not disabled within the meaning of the Social Security Act because substantial evidence in the record demonstrated that her impairments did not meet, medically equal, or functionally equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.924, 416.925, and 416.926). Tr. 17.

On February 28, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-28. This action followed.

## FACTUAL BACKGROUND

G.J.R. was born on July 21, 1995. Tr. 180. At the time of filing she was thirteen years old and in the eighth grade. She took regular classes, was not in speech therapy, liked school, and

did "okay" in her classes. Tr. 50-51, 189, 378-79. G.J.R. was diagnosed with Crohn's disease in September of 2008 after she was hospitalized for 10 days due to diarrhea, vomiting, and weight loss. Tr. 273-79, 280-313, 317-77, 382-85, 405-09. G.J.R. also has a history of congenital abnormalities of both thumbs and index fingers, however, she reported that it did not cause her pain or restrict her activities. Tr. 264-66.

G.J.R.'s Crohn's disease has been controlled by daily medications and drug infusions every eight weeks. Tr. 417-60. After being diagnosed, medication decreased her pain, improved her appetite, eliminated vomiting and nausea, and she was "active and full of energy." Tr. 315. G.J.R. sometimes feels tired after the drug infusions, however, and her condition has resulted in about 10 absences from school a year. Tr. 55, 57.

G.J.R.'s symptoms were under control from the end of September 2008 until she was hospitalized from June 30, 2010 to July 15, 2010 for a flare-up of Crohn's disease. Tr. 410-16. Since then, a colonoscopy performed in March 2011 showed mild Crohn's disease. Tr. 418. Treatment notes from the University of Rochester Medical Center indicated that G.J.R.'s Crohn's disease was effectively treated with medication, with no flare-ups since her hospitalization. Tr. 417-60.

**DISCUSSION**

## I.   Jurisdiction and Scope of Review

Title 42 U.S.C., Section 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Mathews v. Eldridge, 424 U.S. 319, 320 (1976). When considering such a claim, the section directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-CV-2019, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. V. NLRB, 305 U.S. 197, 217 (1938). The Court's scope of review is thus limited to determining whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating Plaintiff's claim. Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983)(finding that a reviewing Court does not try a Social Security benefits case de novo). The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983).

Judgment on the pleadings pursuant to Rule 12(c) may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that Plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. <u>See</u> <u>generally</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007).

## II. **The Commissioner's Decision to Deny Benefits is Supported by Substantial Evidence in the Record.**

The ALJ applied the Social Security Administration's three-step analysis for determining whether an individual under the age of 18 is entitled to disability benefits. Under the regulations, a child is disabled if:

1. she has not performed substantial gainful activity;
2. she has a "severe" impairment or combination of impairments that is "severe";
3. the impairment or combination of impairments meet, medically equal, or functionally equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

20 C.F.R. 416.924(a).

In determining whether an impairment or combination of impairments functionally equals the listings, the ALJ must assess the claimant's functioning in terms of six domains. <u>See</u> 20 C.F.R. § 416.926a(b)(1). These domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting

and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. Id.

An individual under the age of 18 will be considered disabled if she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 1382c(a)(3)(C)(i).

The ALJ found that G.J.R. was an adolescent, that she had not engaged in substantial gainful activity since the application date, and that her Crohn's disease and congenital abnormalities of both thumbs and index fingers were severe impairments. Tr. 17. He determined, however, that these impairments did not meet, medically equal, or functionally equal a listing. Id. Thus, the ALJ concluded that G.J.R. was not disabled within the meaning of the Social Security Act. Tr. 25. This Court finds that the ALJ's decision is supported by substantial evidence in the record and is based on the appropriate legal standards.

### Non-Medical Evidence

At the time of filing, G.J.R. was in the eighth grade, took regular classes, and participated in track and tutoring. Tr. 50-51, 58. She could care for her personal needs. Tr. 234.

At the hearing, G.J.R. testified that she had asthma, which occurred only when she had a cold, but that it was controlled with an inhaler and did not interfere with her participation in track. Tr. 58. Additionally, Plaintiff testified that G.J.R. needed speech classes, but she had not pursued them. Tr. 57. Plaintiff stated that G.J.R.'s grades were "okay." Tr. 58.

G.J.R. also testified that she had Crohn's disease. Tr. 51. It made her sick and caused her to lose weight because she had difficulty eating during a flare-up. Id. She was hospitalized for a flare-up of Crohn's disease from June 30 to July 15, 2010. Tr. 53-54. It was the first flare-up since she was diagnosed in September of 2008. Tr. 57.

G.J.R.'s medications, which seem to control the Crohn's disease, include Remicade infusions (that last six-to-seven hours and are given every eight weeks), Prilosec, Prednisone, prenatal vitamins, iron supplements, and a special diet that includes Pediasure. Tr. 54-55, 247, 277. G.J.R. sometimes feels tired after an infusion, and she has about 10 absences a year from school as a result. Tr. 57.

On January 9, 2008 and January 15, 2009, G.J.R.'s teachers indicated that Plaintiff frequently missed school due to illness, and that, when she was present, she often left class to use the restroom. Tr. 194-200, 202-08, 212-18, 220-26. Her teachers assessed, however, that G.J.R. had no problems (1) acquiring and

using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects, and (5) caring for herself. Id. On January 16, 2009 and February 6, 2009, a speech pathologist who had evaluated G.J.R. indicated that there was no evidence of any speech or language disorder. Tr. 209-10, 228-29.

### Medical Evidence

On December 16, 2008, Mark Birnbaum, M.D., saw G.J.R. for a followup appointment (after a previous appointment on September 16, 2008) regarding her history of congenital abnormalities of both thumbs and left index finger. Tr. 264-66. G.J.R. thought that occupational therapy had improved the movement of both her thumbs. Tr. 264. During the September appointment, G.J.R.'s chief complaint was the inability to flex both of her thumbs, a condition she has had since birth. Tr. 265. She reported, however, that she does not experience any type of pain with activity and that it does not restrict her activities in any way. Id. She can write, cook, and do all activities related to school. Id.

G.J.R. was diagnosed with Crohn's disease after being hospitalized from September 2, 2008 to September 12, 2008, for diarrhea, vomiting, and weight loss. Tr. 273-79, 280-313, 317-77, 382-85, 405-09.

On September 30, 2008, Reinaldo Figueroa, M.D., a pediatric gastroenterologist, examined G.J.R. after her discharge from the

hospital. She was diagnosed with Crohn's disease. Tr. 314. Dr. Figueroa reported that G.J.R. was taking Prednisone (20 mg daily), Prevacid (30 mg twice per day), Ferrous sulfate (335 mg three times per day), and multivitamins, plus two Lactaid tablets before ingesting food containing lactose. Tr. 315. Dr. Figueroa also reported that G.J.R. received the first infusion of Remicade on September 11, was discharged from the hospital on September 12, and was started on a lactose-free diet on September 16. On September 26, she received the second infusion of Remicade. Tr. 315.

At the time of the follow-up appointment, Plaintiff reported that G.J.R. was having three bowel movements per day. She had some pain with defecation, some tenesmus, but she had a good appetite, no vomiting, no nausea, no pain with wiping because a fistula was closing and no fevers. She had been more active and full of energy. Id.

On February 19 and February 20, 2009, non-examining, State-agency consultants Ira Pinnelas, M.D., and Bruce Hertz, Ph.D., opined that G.J.R. had:

1. no limitation Acquiring and Using Information;
2. no limitation Attending and Completing Tasks;
3. no limitation Interacting and Relating with Others;
4. a less than marked limitation Moving About and Manipulating Objects due to her abnormalities of both thumbs and left index finger;
5. no limitation Caring for Herself; and
6. a marked limitation of Health and Physical Well-Being due to flare-ups of her Crohn's disease.

Tr. 267-72.

As a result, the consultant doctors found that G.J.R.'s impairments were severe, but did not meet, medically equal, or functionally equal the Listings. Tr. 267.

Koorosh Kooros, M.D., of the University of Rochester Medical Center, treated G.J.R. from July 8, 2009 to April 26, 2010. Tr. 389-403. On April 26, 2010, Dr. Kooros noted that G.J.R. had received ten Remicade infusions so far. Tr. 389. G.J.R. denied any abdominal pain, diarrhea, or blood in the stool. Id. She did not have any nausea, vomiting, fever, arthritis, or skin rashes. Id. She had lost about one-half of a pound since her last visit. Id. She indicated that she felt full soon after starting to eat, which is why she did not finish her meals. Id.

At that time, G.J.R. was taking Prevacid, prenatal vitamins, an iron supplement, and MiraLax, as needed, as well as three cans of Pediasure a day. Id. G.J.R. reported that she had daily bowel movements without blood or mucus in them. Id. Her most recent upper GI small bowel follow through (on March 8, 2010) was "completely normal." Tr. 389, 402.

G.J.R. was hospitalized from June 30 to July 15, 2010, for a flare-up of Crohn's disease. Tr. 410-16. While at a scheduled Remicade infusion, G.J.R. began vomiting. Tr. 412. She said she "had been experiencing 5-6 days of nausea, vomiting, generalized abdominal pain, chills, decreased appetite and loose stools." Id. G.J.R. also noted she had lost five pounds since April. Id.

While hospitalized, a scope of G.J.R.'s esophagus, stomach, and intestines were all normal. Id. She received nutrition through an IV until her ability to eat improved and she was discharged. Id. Since then, a colonoscopy performed in March 2011 showed mild Crohn's disease. Tr. 418. Treatment notes from the University of Rochester Medical Center (dated June 30, 2010 to March 14, 2011) indicated that G.J.R.'s Crohn's disease was effectively treated with medication, with no flare-ups since her hospitalization. Tr. 417-60.

## A. The ALJ's Determination that G.J.R.'s Impairments Did Not Meet or Medically Equal Listing 105.06 (Irritable Bowel Disease, or "IBD") is Supported by Substantial Evidence.

The ALJ found that G.J.R.'s impairments did not meet or medically equal Listing 105.06[1], stating that "the medical evidence of record does not establish the presence of the criteria for paragraph 'A' or 'B'" of the Listing. Tr. 17.

---

[1] ***105.06 Inflammatory Bowel Disease (IBD)*** documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with:

A. Obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6-month period; OR

B. Two of the following despite continuing treatment as prescribed and occurring within the same consecutive 6-month period:
1. Anemia with hemoglobin less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or
2. Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or
3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic mediation, present on at least two evaluations at least 60 days apart; or
4. Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
5. Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter. (See 105.10 for children who have not attained age 3.)

Plaintiff claims that the ALJ erred by not making a finding as to whether G.J.R.'s symptoms were medically equivalent to the Listing, and that he failed to develop the medical opinion evidence in that regard. Pl.'s Mem. at 9. Plaintiff alleges that the ALJ should have provided an explanation as to why G.J.R.'s impairments were not medically equivalent to Listing 105.06 (IBD) or Listing 105.08[2] (Malnutrition) (because Listing 105.00(E)(4) states: "if you are unable to maintain adequate nutrition, we will evaluate your impairment under 105.08."). Pl's Mem. at 10-11. Plaintiff asserts that an updated medical opinion should have been obtained to ascertain whether G.J.R.'s impairments were of a severity equivalent to Listings 105.06 and/or 105.08. Pl.'s Mem. at 11.

If the claimed symptoms and medical evidence support the criteria described by a listing, the ALJ must give an explanation

---

[2] **105.08** *Malnutrition* due to any digestive disorder with:

A. Chronic nutritional deficiency despite continuing treatment as prescribed, present on at least two evaluations at least 60 days apart within a consecutive 6-month period, and documented by one of the following:

1. Anemia with hemoglobin less than 10.0 g/dL; or
2. Serum albumin of 3.0 g/dL or less; or
3. Fat-soluble vitamin, mineral, or trace mineral deficiency;

AND

B. Growth retardation documented by one of the following:

1. For children who have not attained age 2, multiple weight-for-length measurements that are less than the third percentile on the CDC's most recent weight-for-length growth charts, documented at least three times within a consecutive 6-month period; or

2. For children age 2 and older, multiple Body Mass Index (BMI)-for-age measurements that are less than the third percentile on the CDC's most recent BMI-for-age growth charts, documented at least three times within a consecutive 6-month period.

why a claimant does not meet or equal the listing. See Kuleszo v. Barnhart, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002). If the ALJ does not provide reasons for rejecting a listed impairment, the Court can look to other parts of the decision and credible evidence in the record to determine if the rejection was supported by substantial evidence. See Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982). For a finding of disability based on a listing, the claimant's impairments must satisfy all the listing's criteria. 20 C.F.R. § 416.925(d). The combined effect of all the claimant's impairments must be considered, including those determined not to be severe. See 42 U.S.C. § 1382c(a)(3)(G); 20 C.F.R. §§ 416.923, 416.924a(b)(4).

Paragraph A of Listing 105.06 (IBD) is not met because G.J.R. does not have "obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation," as explained by the Listing. Neither the doctors' evaluations nor Plaintiff or G.J.R.'s testimony allege such a problem. Furthermore, after a careful review of the record, evidence shows that G.J.R.'s impairment does not meet the criteria required by Paragraph B of Listing 105.06. Thus, because the claimed symptoms and medical evidence do not support the criteria described by Listing 105.06, this Court finds that the ALJ's decision was supported by substantial evidence.

Additionally, although the ALJ did not address it, substantial evidence in the record demonstrates that G.J.R.'s impairment does

not meet or medically equal the criteria required by Listing 105.08 (Malnutrition).

Paragraph A of Listing 105.08 requires "chronic nutritional deficiency despite continuing treatment as prescribed." Although G.J.R. has trouble gaining weight and tends to lose weight during a flare-up of her Crohn's disease, upon discharge from the hospital (on July 15, 2010) it was prescribed that she drink three cans of PediaSure a day and take daily vitamins to maintain her nutrition. Tr. 415. Recent treatment notes from the University of Rochester Medical Center report that this was effective treatment. Tr. 425. At a followup appointment on September 16, 2010, Dr. Thomas Rossi reported that G.J.R. "seems to have gained weight nicely and has otherwise been healthy" and that "we can stop her iron and stop her PediaSure." Id.

Paragraph B of Listing 105.08 requires "multiple Body Mass Index (BMI)-for-age measurements that are less than the third percentile on the CDC's most recent BMI-for-age growth charts..." On March 1, 2010, Dr. Koorosh Kooros reported that G.J.R. weighed 45 kg, which is between the 10th and 25th percentiles, and was 164 cm tall, which is between the 50th and 75th percentiles. Tr. 391. On February 21, 2011, she weighed 47.9 kg. Tr. 420. As of December 23, 2010, she was 165.5 cm tall. Tr. 421. Despite G.J.R.'s low weight and her difficulty gaining weight, recent treatment notes from the University of Rochester Medical Center

report that she is healthy and that her Crohn's disease is controlled. Tr. 420. There is no report of malnurishment.

After a careful review of the record, this Court finds that substantial evidence supports a finding that G.J.R.'s impairments did not meet or medically equal Listing 105.08.

**B.** **The ALJ Did Not Err in Failing to Further Develop the Record.**

Plaintiff alleges that the ALJ erred in failing to develop the medical opinion evidence regarding the equivalence of G.J.R.'s symptoms to Listing 105.06. Pl.'s Mem. At 9. The Commissioner contends that the record was sufficient to support a decision on the issue of disability, thus the ALJ was not required to further develop the record. This Court finds that the ALJ did not err in failing to develop the record or recontact any physician.

Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history. See Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record.")(citing Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)); see also Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996). Recontacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record. Donmore v. Astrue, No. 07-CV-732S, 2009 U.S. Dist. LEXIS 83586, at *4 (W.D.N.Y. Sept.

14, 2009) (<u>citing</u> 20 C.F.R. § 404.1512(e)).  The ALJ does not have a duty to recontact a treating physician if the evidence submitted by the treating source, viewed as a whole, is complete.  Hluska v. Astrue, No. 6:06-CV-0485 (LEK/VEB), 2009 WL 799967, at *17 (N.D.N.Y. Mar. 25, 2009)(citations omitted).  Moreover, the ALJ is not obligated to recontact treating physicians when the record contains no critical gaps and there are medical opinions from different sources concerning the plaintiff's impairments.  Taylor v. Astrue, No. 3:05-CV-1444 (LEK/DEP), 2008 WL 3884356, at *13 n.18 (N.D.N.Y. Aug. 18, 2008).

After a review of the complete record, this Court finds that the record contains ample treatment notes from G.J.R.'s treating sources, teachers, and State consultant doctors related to her impairments, as well as G.J.R. and Plaintiff's testimonial evidence.  Because the ALJ had adequate medical and other evidence in the record to assess G.J.R.'s disability status, and there are no obvious gaps in her treatment history, this Court finds that there was no reason for the ALJ to recontact any of the treating sources or to obtain additional medical opinions.

C.  <u>**The ALJ's Determination that G.J.R.'s Impairments Did Not Functionally Equal the Listings is Supported by Substantial Evidence.**</u>

The ALJ found that G.J.R. had a less than marked limitation in the domain Moving About and Manipulating Objects, and a marked limitation in the domain Health and Physical Well-Being.  Tr. 22-

24.  This Court finds that the ALJ's determination of functional equivalence is supported by substantial evidence.

To determine whether an impairment or combination of impairments functionally equals the listings, the ALJ must assess the claimant's functioning in terms of the following six domains:

> (1) acquiring and using information;
> (2) attending and completing tasks;
> (3) interacting and relating with others;
> (4) moving about and manipulating objects;
> (5) caring for yourself; and
> (6) health and physical well-being.

See 20 C.F.R. § 416.926a(b)(1).

In making this assessment, the ALJ must compare how appropriately, effectively and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments.  20 C.F.R. § 416.926a(b).  To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  20 C.F.R. 416.926a(d).

A child has a "marked" limitation in a domain when her impairment(s) interferes "seriously" with the ability to independently initiate, sustain, or complete activities.  20 C.F.R. 416.926a(e)(2).  A child has an "extreme" limitation in a domain when her impairment(s) interferes "very seriously" with her ability to independently initiate, sustain, or complete activities.  20 C.F.R. 416.926a(e)(3).

In the domain Health and Physical Well-Being, a marked limitation means frequent episodes of illness because of the impairment(s) or frequent exacerbations of the impairment(s) that result in significant documented symptoms or signs that occur:

> (a) on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more; (b) more often than 3 times in a year or once every 4 months, but not lasting for 2 weeks; or (c) less often than an average of 3 times a year or once every 4 months but lasting longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

20 C.F.R. 416.926a(e)(2). An "extreme" limitation in this domain means there are episodes of illness or exacerbations that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation. 20 C.F.R. 416.926a(e)(2).

When evaluating the child's functioning, the ALJ must consider the functional limitations from all medically determinable impairments, including any impairments that are not severe. 20 C.F.R. 416.926a(a).

Plaintiff asserts that the record supports a finding that G.J.R.'s Crohn's disease is an extreme limitation in the Health and Physical Well-Being domain, and/or that she has marked limitations in the domain Attending and Completing Tasks. Pl.'s Mem. at 12.

### Health and Physical Well-Being

Plaintiff argues that, because of her "excessive absences from school as a result of her symptoms," G.J.R.'s Crohn's disease

interferes "very seriously" with her ability to independently sustain and complete activities, and is thus an "extreme" limitation. Pl.'s Mem. at 13. Plaintiff further asserts that the ALJ "did not provide a rational (sic) as to why he found G.J.R.'s impairment marked rather than extreme," and that he failed to develop the record by recontacting her treating physician or seeking an updated medical opinion. Tr. 13. As discussed previously, this Court finds that the ALJ had no duty to further develop the record.

Plaintiff also argues that, instead of recontacting treating physicians or obtaining an updated medical opinion, the ALJ erroneously gave great weight to State agency consultants in making his functional determination. Pl.'s Mem. at 14. An ALJ is "responsible for reviewing the evidence and making findings of fact and conclusions of law." See 20 C.F.R. § 416.927(e)(2). The opinions of State consultants may be relied on by an ALJ, and their findings can constitute substantial evidence. See id.

Here, the ALJ noted in his decision the standard for evaluating State consultant opinion evidence, and there is no indication that the regulations were not followed. Tr. 19. The State consultant evidence was consistent with treating notes, academic reports, hearing testimony, and other evidence of record. Accordingly, this Court finds that the ALJ properly relied on the findings of the State agency consultants who opined that G.J.R.'s

impairments were severe but did not meet, medically equal or functionally equal the Listings.  Tr. 267.

In determining that G.J.R. had a marked limitation in the domain of Health and Physical Well-Being, the ALJ noted that G.J.R. suffered for three months from diarrhea and lost about 20 pounds. Tr. 24.  He explained, however, that once "an appropriate diagnosis [had] been made and [G.J.R.] received proper treatment, she is going about her daily activities without evidence of significant symptoms."  Id.  The ALJ indicated that G.J.R. gets tired after a Remicade infusion and has trouble gaining weight, but that her symptoms are not always present and that she did not experience an exacerbation of her Crohn's disease until June 30, 2010 when she was hospitalized for treatment.  Id.

If "the ALJ's rationale can be perceived from the evidence in the record, a remand for clarification is unnecessary."  See Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112-13 (2d Cir. 2010).  After carefully reviewing the record, this Court finds that there is substantial evidence to support the ALJ's decision that G.J.R. does not have an extreme limitation in this domain.

### Attending and Completing Tasks

The domain Attending and Completing Tasks considers how well a child is able to focus and maintain attendance, and how well she is able to begin, carry through, and finish activities, including the mental pace at which she performs activities and the ease of changing activities.  Tr. 20.  It also refers to a child's ability

to avoid impulsive thinking and her ability to prioritize competing tasks and manage her time. 20 C.F.R. 416.926a(h) and SSR 09-4p.

Some examples of difficulty children could have in this domain are: (i) is easily startled, distracted, or over-reactive to everyday sounds, sights, movements, or touch; (ii) is slow to focus on, or fails to complete, activities of interest (e.g., games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones she is capable of completing; (v) requires extra supervision to remain engaged in an activity; or (vi) cannot plan, manage time, or organize self in order to complete assignments or chores. 20 C.F.R. 416.926a(h)(3) and SSR 09-4p.

Plaintiff argues that the ALJ should have found that G.J.R. had a marked limitation in this domain "due to the need for frequent breaks and absences secondary to her need for frequent bathroom breaks and experience of nausea." Pl.'s Mem. at 12. Plaintiff contends that, because G.J.R. had absences from school and had to use the restroom frequently, she repeatedly became sidetracked from activities and thus had a marked limitation in this domain. Pl.'s Mem. at 15.

G.J.R.'s teachers, however, indicated that G.J.R. had no limitations in this domain. Tr. 194-200, 202-08, 212-18, 220-26. The State agency consultant doctors also opined that she had no limitation in this domain. Tr. 269. Accordingly, this Court finds

that substantial evidence in the record supports the ALJ's finding that "the totality of the evidence of record... reveals no limitation in [the domain Attending and Completing Tasks]." Tr. 21.

For the stated reasons, the ALJ correctly found that G.J.R.'s impairments did not result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. 416.926a(d). As a result, G.J.R.'s impairments did not functionally equal the listings, and thus she was properly found not to be disabled.

### D. **The ALJ Applied the Appropriate Legal Standards Regarding Plaintiff's Credibility and his Determination is Supported by the Record.**

Plaintiff argues that the ALJ failed to apply the appropriate legal standards for assessing her credibility. The regulations provide that a parent can testify regarding the symptoms of his or her child when the child cannot describe them fully. See 20 C.F.R. § 416.928(a). Credibility of witnesses is primarily determined by the ALJ, not the courts. See Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1982). When assessing credibility, a conclusory statement is not sufficient; the ALJ's decision must contain specific reasons supported by evidence in the record. See SSR 96-7P, 1996 WL 374186, *4 (S.S.A.). The decision must explain to the individual and a reviewing court the weight given to the testimony and the reasons for the determination. See id.

Plaintiff contends that, instead of making a finding as to credibility, the ALJ "summarized some of the testimony and evidence, but failed to engage in an analysis of the facts and law relating to the testimony and other allegations of symptoms." Pl.'s Mem. at 16.

In his decision, the ALJ noted that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, [he] must make a finding on the credibility of the statements based on a consideration of the entire case record." Tr. 18. The ALJ did not discount Plaintiff's statements regarding G.J.R.'s Crohn's disease or congenital abnormalities of the thumbs and index fingers. He appropriately noted that her Crohn's disease is controlled by medication and that her congenital abnormalities do not cause her pain or restrict her activities. Tr. 18-19.

The ALJ indicated, however, that allegations of disability due to speech and language problems are unsupported by the record. Tr. 18. A speech pathologist completed a questionnaire indicating that G.J.R. has displayed "no evidence of any speech disorder" and that her speech patterns are appropriate for her chronological age and cognitive level. Tr. 209-10. Furthermore, the ALJ correctly noted that G.J.R.'s asthma does not restrict her activities. Tr. 19. Plaintiff and G.J.R. testified that her asthma does not interfere with track, and that she uses an inhaler as needed but does not need to take it on a daily basis. Tr. 58.

Thus, after a thorough review of the record, this Court finds that the ALJ's credibility decision is supported by substantial evidence.

## Conclusion

For the reasons stated, and after a careful review of the record, this Court finds that the Commissioner's denial of SSI benefits to Plaintiff was based on substantial evidence in the record and was not erroneous as a matter of law. Accordingly, the Commissioner's decision is affirmed. This Court grants Commissioner's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge


DATED:     June 14, 2013
           Rochester, New York